**FILED**

JAN 1 1 2023

JUDGE ANDREA WOOD
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 20 CR 299 |
| v. | Judge Andrea R. Wood |
| HARDY LEE BROWNER | |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant HARDY LEE BROWNER, and their attorneys, MOLLY ARMOUR and JOSHUA HERMAN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A) as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2.     The superseding information in this case charges defendant with knowingly and willfully making a materially false, fictitious, and fraudulent statement and representation, involving international terrorism in a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI"), in violation of Title 18, United States Code, Section 1001(a)(2) (Count 1); and one count sex trafficking of a minor, in violation of Title 18, United States Code, Sections 18 U.S.C. 1591(a)(1), (b)(2) and (c) (Count 2).

## Charges in Case Number 21 CR 302

3.    Defendant is also charged in case number 21 CR 302, also pending in the Northern District of Illinois.  In that case, defendant is charged with three counts: sex trafficking of a minor in violation of Title 18, United States Code, Section 1591(a), (b)(1), (b)(2), and (c);  knowingly obstructing or interfering with the enforcement of the sex trafficking statute, in violation of Title 18, United States Code, Section 1591(d); and using a facility and means of interstate commerce to persuade or induce a minor under the age of 18 to engage in unlawful sexual activity, in violation of Title 18, United States Code, Section 2422(b).

4.    Defendant has read the charges against them contained in the superseding information, and those charges have been fully explained to them by their attorneys.

5.    Defendant fully understands the nature and elements of the crimes with which they have been charged.

### Charges to Which Defendant Is Pleading Guilty

6.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the superseding information: Count 1, which charges defendant with knowingly and willfully making a materially false, fictitious, and fraudulent statement and representation, involving international terrorism in a matter within the jurisdiction of the FBI, in violation of Title 18, United States Code, Section 1001(a)(2); and Count 2, which charges defendant with sex trafficking of a

2

minor, in violation of Title 18, United States Code, Sections 18 U.S.C. 1591(a)(1), (b)(2) and (c).

## Factual Basis

7.      Defendant will plead guilty because they are in fact guilty of the charges contained in Counts 1 and 2 of the superseding information. In pleading guilty, defendant admits the following facts and that those facts establish their guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

a.      With respect to Count 1 of the superseding information, on or about July 15, 2015, at Chicago, in the Northern District of Illinois, defendant did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation, which involved international terrorism in a matter within the jurisdiction of the FBI, an agency within the executive branch of the Government of the United States, in violation of Title 18, United States Code, Section 1001(a)(2).

Specifically, from between on or about May 17 and July 13, 2014, defendant used the Twitter account @AhkTheBlackArab to communicate with Twitter account @AbuFarriss, which was an account used by Individual A. The @AbuFarriss account publicly claimed allegiance to the foreign terrorist organization, the Islamic State of Iraq and the Levant ("ISIL"). In those communications, defendant and @AbuFarriss discussed ISIL. For example, on or about June 28, 2014, @AbuFarriss wrote to defendant, "Dawlah [the Islamic State] has Soo many brothers martyrdom ops they draw lots instead of a que or list." That same day, defendant responded, "enter the

3

truth has given a lot of people a different point of view." The next day, defendant wrote to @AbuFarriss, "you know here in the west there's a lot of negative talka [sic] about the dawlah [the Islamic State] videos like."

On or about July 13, 2014, defendant tweeted to @AbuFarriss: "are Americans obliged to pledge bayyah to IS and if so how do they do that when there [sic] so far from IS." The defendant acknowledges that "Bayyah" is a reference to an oath of allegiance, and "IS" is a reference to the Islamic State.

In addition, defendant also communicated, using the Twitter account @AhkTheBlackArab, with @Dawla_Newsmedia, which is a Twitter account for ISIL's media arm and which listed, "Join the Islamic State" on its public account. For example, on or about May 11, 2014, defendant wrote to @Dawla_Newsmedia: "isn't it hard for an american Muslim to make hijrah [immigrate] there?" On May 17, 2014, defendant tweeted to @Dawla_Newsmedia and to another account that appears to be held by an ISIL sympathizer, "death will find you regardless better to choose a path of righteousness rather than a path of comfort."

Defendant created and controlled at least three other Twitter accounts, including @RightlyGuidedTA, @Ahkishaykh, and @ChocalateShaykh. Defendant used those three Twitter accounts to make public posts and ask questions regarding, among other subjects, "jihad," "shaheed" (which is a word for "martyrs"), and ISIL.

On or about July 15, 2015, FBI agents interviewed defendant regarding their Twitter accounts, their communications with an ISIL recruiter, and their pro-ISIL

4

Twitter postings. Defendant told FBI agents that (a) defendant did not use the following Twitter accounts: @AhkTheBlackArab, @RightlyGuidedTA, @Ahkishaykh, and @ChocalateShaykh; (b) defendant did not communicate with the user of the @AbuFarriss Twitter account and @Dawla_NewsMedia. The defendant knew these statements were false, and they lied to FBI agents.

Defendant acknowledges that these false statements were material, or had the natural tendency to influence, or be capable of influencing, a decision of the FBI. Defendant also acknowledges that their false statements related to international terrorism, and that international terrorism is a matter that falls within the jurisdiction of the FBI.

b.     With respect to Count 2 of the superseding information, beginning on or about around December 5, 2019 and continuing until on or about January 3, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant, in and affecting interstate commerce, knowingly patronized and solicited by any means a person, namely Minor A, having had a reasonable opportunity to observe Minor A, and knowing and in reckless disregard of the fact that Minor A had attained the age of 14 years old but had not attained the age of 18 years old and would be caused to engage in a commercial sex act, in violation of Title 18, United States Code, Sections 1591(a)(1), (b)(2) and (c).

Specifically, defendant started communicating online with a minor who was born in early December 2005 (Minor A) in the summer of 2019. Defendant used

Instagram to communication with Minor A, and also used a cellular phone to communicate with Minor A by phone calls and text messages. In 2019, Defendant and Minor A met in person on multiple occasions, and during some of those meetings, defendant and Minor A had sex. When they saw each other in person, defendant sometimes gave Minor A cash or other items of value.

Between approximately December 16 and December 20, 2019, defendant used Instagram to solicit Minor A to engage in commercial sex acts. In their Instagram communications, defendant and Minor A and discussed past and future payments from defendant to Minor A. During the Instagram communications, defendant also discussed setting up commercial sex acts between Minor A and other individuals, though no such acts with other individuals ultimately took place.

At the time that defendant communicated with Minor A in December 2019, defendant knew Minor A was under the age of 18 because, among other reasons defendant had sexual intercourse with Minor A on multiple prior occasions in 2019. Defendant and Minor A also met in person and had sex during the time period of approximately December 16 and December 20, 2019.

Defendant acknowledges that defendant's use of Instagram and cellular phones to communicate with Minor A was in and affecting interstate commerce. Defendant also acknowledges that in December 2019, he was 32 years old.

6

## Maximum Statutory Penalties

8.     Defendant understands that the charges to which they are pleading guilty carry the following statutory penalties:

a.     Count 1 carries a maximum sentence of 8 years' imprisonment, because the investigation that gave rise to the FBI's interview of the defendant involved a matter of international terrorism. Count 1 also carries a maximum fine of $250,000. Defendant further understands that with respect to Count 1, the judge also may impose a term of supervised release of not more than three years.

b.     Count 2 carries a maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 10 years' imprisonment. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation on this count.  Count 2 also carries a maximum fine of $250,000. Defendant further understands that with respect to Count 2, the judge also must impose a term of supervised release of at least five years, and up to any number of years, including life.

c.     Defendant further understands that the Court must order restitution to the Minor A in an amount determined by the Court.

d.     Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which they have pled guilty, in addition to any other penalty or restitution imposed.

7

e.    Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is life imprisonment, and the minimum sentence is 10 years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, a period of supervised release up to life, and special assessments totaling $200, in addition to any restitution ordered by the Court.

f.    Defendant further understands that, pursuant to Title 18, United States Code, Section 3014, defendant will be assessed an additional $5,000 following a plea of guilty to Count 2, if the Court determines that they are a non-indigent person.

### Sentencing Guidelines Calculations

9.    Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities

8

among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

        a.     **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2021 Guidelines Manual.

        b.     **Offense Level Calculations.**

        **Count 1**

        i.     The base offense level is 14, pursuant to Guideline § 2J1.2(a).

        ii.     Pursuant to Guideline § 2J1.2(b)(1)(C), the offense level is increased by 12 levels because the statutory maximum term of eight years' imprisonment applies because the matter relates to international terrorism.

        iii.     The adjusted offense level for Count 1 is 26.

        **Count 2**

        iv.     Because Minor A had attained the age of 14 years but had not yet attained the age of 18 years at the time of the offense, the base offense level is 30, pursuant to Guideline § 2G1.3(a)(2).

v.       Pursuant to Guideline § 2G1.3(b)(2)(B) and Application Note 3(B), the offense level is increased by 2 levels because the defendant unduly influenced Minor A to engage in prohibited sexual conduct.

vi.       Pursuant to Guideline § 2G1.3(b)(3)(A), the offense level is increased by 2 levels because defendant used an interactive computer service (Instagram) to patronize and solicit Minor A to engage in prohibited sexual conduct.

vii.       Pursuant to Guideline § 2G1.3(b)(4)(A), the offense level is increased by 2 levels because the offense involved the commission of a sex act or sexual conduct.

viii.       The adjusted offense level for Count 2 is 36.

**Grouping**

ix.       Pursuant to Guideline §§ 3D1.3 and 3D1.4, the offenses are not grouped, but there is no increase to the total offense level because the offense level for Count 1 is 9 or more levels lower than the offense level for Count 2.

x.       The total adjusted offense level is 36.

**Acceptance of Responsibility**

xi.       Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for their criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for their actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and

10

the Probation Office with all requested financial information relevant to their ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

> xii.    In accord with Guideline § 3E1.1(b), defendant has timely notified the government of their intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

> c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 6 and defendant's criminal history category is III:

> i.    Defendant was sentenced on or about June 23, 2006 to 40 months' imprisonment as a result of defendant's conviction for possessing a firearm as a convicted person in the Superior Court of Los Angeles County, California. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this sentence.

> ii.    Defendant was sentenced on or about April 28, 2010 to 16 months' imprisonment as a result of defendant's conviction for robbery and violation

of parole in the Superior Court of Los Angeles County, California. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this sentence.

   d. **Repeat and Dangerous Sex Offender Against Minors.** Pursuant to Guideline § 4B1.5(b)(1), the offense level is increased by 5 levels because the sex trafficking offense in Count 2 is a covered sex crime, neither § 4B1.1 nor subsection (a) of the guidelines applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct. The adjusted offense level is 38.

   e. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level, is 38 which, when combined with the anticipated criminal history category of III, results in an anticipated advisory sentencing guidelines range of 292 to 365 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. Defendant also acknowledges that they are subject to a statutory minimum sentence of 10 years' imprisonment.

   f. Defendant and their attorneys and the government acknowledge that the above guidelines calculations are preliminary in nature and based on facts known to the parties as of the time of this Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guidelines calculation. Accordingly, the validity of

this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw their plea on the basis of the Court's rejection of these calculations.

11.     Defendant understands that the guidelines calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed. R. Crim. P. 11(c)(1)(B). Errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw their plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

12.     Each party is free to recommend whatever sentence it deems appropriate.

13.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw their guilty plea.

13

14.     Regarding restitution, defendant acknowledges that the total amount of restitution owed to Minor A will be determined by the Court at sentencing, and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing.

15.     Restitution shall be due immediately and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), they are required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect their ability to pay restitution.

16.     Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

18.     At sentencing, the government will move to dismiss the indictment in the above-captioned case and will move to dismiss case 21 CR 302, currently pending in the U.S. District Court for the Northern District of Illinois.

14

**Acknowledgments and Waivers Regarding Plea of Guilty**

**Nature of Agreement**

19.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in cases 20 CR 299 and 21 CR 302.

20.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

**Waiver of Rights**

21.     Defendant understands that by pleading guilty they surrender certain rights, including the following:

          a.     **Right to be charged by indictment.** Defendant understands that they have a right to have the charges prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives their right to be prosecuted by indictment and to assert

at trial or on appeal any defects or errors arising from the information, the information process, or the fact that they have been prosecuted by way of information.

      b.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against them, and if they do, would have the right to a public and speedy trial.

      i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

      ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and their attorneys would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

      iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict them unless, after hearing all the evidence, it was persuaded of their guilt beyond a reasonable doubt and that it was to consider each count of the superseding information separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

16

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and their attorneys would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in their own behalf. If the witnesses for defendant would not appear voluntarily, they could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that they could decline to testify, and no inference of guilt could be drawn from their refusal to testify. If defendant desired to do so, they could testify in their own behalf.

c. **Waiver of appellate and collateral rights**. Defendant further understands they are waiving all appellate issues that might have been available if they had exercised their right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal their conviction and the sentence imposed.

17

Acknowledging this, defendant knowingly waives the right to appeal their conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives their right to challenge their conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

22.     Defendant understands that by pleading guilty they are waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to them, and the consequences of their waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

23.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the

nature, scope, and extent of defendant's conduct regarding the charges against them, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

24.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of their financial circumstances, including their recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of their sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

25.     For the purpose of monitoring defendant's compliance with their obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of

19

defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

26.     Defendant understands that pursuant to Title 18, United States Code, Sections 3583(d) and 4042(c), the Court must order as an explicit condition of supervised release that defendant register as a sex offender in compliance with the requirements of the Sex Offender Registration and Notification Act. Defendant also understands that they will be subject to federal and state sex offender registration requirements independent of supervised release, that those requirements may apply throughout their life, and that they may be subject to state and federal prosecution for failing to comply with applicable sex offender registration laws. Defendant understands that no one, including their attorney or the Court, can predict to a certainty the effect of their conviction on their duties to comply with current or future sex offender registration laws. Defendant nevertheless affirms that they want to plead guilty regardless of any sex offender registration consequences that their guilty plea may entail.

27.     Defendant agrees to participate in psychological counseling and sex offender treatment as directed by the Probation Office as a condition of any sentence of probation or supervised release imposed.

## Other Terms

28.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including

providing financial statements and supporting records as requested by the United States Attorney's Office.

29.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

30.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

31.     Defendant understands that their compliance with each part of this Agreement extends throughout the period of their sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event they violate this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of

limitations between the signing of this Agreement and the commencement of such prosecutions.

32.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

33.    Defendant and their attorneys acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

34.    Defendant acknowledges that they have read this Agreement and carefully reviewed each provision with their attorneys. Defendant further acknowledges that they understand and voluntarily accept each and every term and condition of this Agreement.


AGREED THIS DATE:  1|5|23

JOHN R. LAUSCH, JR.
United States Attorney

BARRY JONAS
JULIA SCHWARTZ
Assistant U.S. Attorneys

HARDY LEE BROWNER
Defendant

MOLLY ARMOUR
JOSHUA HERMAN
Attorneys for Defendant

22